### LEMLY v. UNITED STATES.
### No. 47665.

United States Court of Claims.

Decided July 10, 1950.

See also, 109 Ct.Cl. 760, 75 F.Supp. 248.

Burr Tracy Ansell, Washington, D. C., for plaintiff.

John R. Franklin, Washington, D. C., with whom was Assistant Attorney General H. G. Morison, for defendant.

Before JONES, Chief Judge, and HOWELL, MADDEN, WHITAKER and LITTLETON, Judges.

HOWELL, Judge.

This is a suit brought by plaintiff, a Naval Reserve Officer on the honorary retired list of the United States Naval Reserve to recover retirement pay for disability allegedly suffered in line of duty while on extended active naval service, as provided by Section 4 of the Naval Aviation Personnel Act of 1940, 54 Stat. 864, as amended, 34 U.S.C.A. § 855c—1, which in pertinent part reads as follows: "All officers * * * of the United States Naval Reserve * * * who, if called or ordered into active naval or military service by the Federal Government for extended naval or military service in excess of thirty days, suffer disability or death in line of duty from disease or injury while so employed * * * they or their beneficiaries shall be * * * entitled to receive the same pensions, compensation, retirement pay, and hospital benefits as are now or may hereafter be provided * * * for officers * * * of corresponding grades and length of service of the Regular Navy. * * *"

The particular disability which plaintiff alleges he suffered in line of duty is Paget's disease. This disease is a disease of the adult skeleton generally occurring after the age of 40 years. It is characterized by changes in the formation of the bone resulting from an unbalance in the absorption of old bone and its replacement with new bone. The pelvis and skull are among the bones most frequently involved and the cause of the disease is not known. It is

usually a slowly progressive condition with the earliest lesions appearing, as a rule, in the pelvis. The most common and ordinarily the first symptom complained of is pain. Diagnosis of the condition is usually by disclosure of bone changes upon X-ray made either as a result of complaint or pain or in connection with some other condition. Absolute diagnosis is not always possible on the first films made of a patient at early stages, particularly in the absence of pain. There is no specific treatment for the condition. There is no cure for the disease and the prognosis is variable, the disease being marked usually by slow progression but sometimes by rapid progression and at times by slow or rapid progression to a point where the disease becomes arrested. It is impossible to ascertain the date of the onset of the condition. The disease when far advanced, commonly results in spontaneous fracture of the bones involved and is fairly often accompanied by sarcoma or cancer of the bone. The chief disabling feature of Paget's disease is pain, which may or may not be present with the bone condition, and may or may not have a severity related to the degree of involvement of the skeletal structure. Paget's disease is not considered an occupational condition, or attributable solely to a military or naval career.

Plaintiff, on June 9, 1942, after being physically examined, entered upon active duty as a reserve officer in the grade of captain, and was assigned duties as a disbursing officer at Pearl Harbor. On March 12, 1944, he attained the age of 64 years, because of which he was placed shortly thereafter on the honorary retired list. During the period of active duty prior to October 1944 plaintiff suffered an infection in the kidney area, for which he received treatment. Prior to his release from active duty in October 1944, plaintiff at his own suggestion and request went to the Naval Medical Center, Bethesda, Maryland, in order to check on this earlier kidney condition. Specialized X-rays of the plaintiff's kidneys were made which revealed there was no further kidney trouble and the examiner noted that plaintiff's general appearance was healthy for a man of 64 years. On October 17, 1944, medical officers at the Naval Hospital and at the Naval Dispensary found that plaintiff was fit for active duty and for release from active duty respectively. As of this date, plaintiff was ordered to inactive duty and reverted to inactive status.

Plaintiff had been a civilian employee of the Government from 1933–1940 and from 1941–1942, and in December 1944, following his release from the Navy, he obtained employment with the Foreign Economic Administration in Washington, D. C. This employment involved desk duties for the most part, but it also involved considerable walking to and from various Government agencies in the District of Columbia.

Plaintiff claims that in June 1945, while a civilian employee of the Government, he began to experience soreness, ache or dull pain in his left hip and leg, and also headaches. He consulted the Naval Dispensary in July 1945 and was treated at the dispensary on this and subsequent visits until July 1946.

Plaintiff consulted private physicians, one of whom on the basis of X-rays and plaintiff's complaints as to soreness and pain, advised the plaintiff of findings "consistent with Paget's disease" in July 1946.

Plaintiff was advised by a private physician to avail himself of retirement, if possible, and on December 31, 1946, plaintiff did avail himself of voluntary Civil Service retirement and retired from his civilian position.

Some time in 1946 plaintiff requested and was given a copy of his Naval Medical Record. In this record an examining radiologist had reported on the specialized type of X-rays made to check the plaintiff's kidneys at Bethesda in October 1944, and in the course of making incidental observations noted that there may have been some changes in the pelvic region indicative of Paget's disease.

Plaintiff in October 1946 and subsequent thereto corresponded with the Navy Department requesting determination of his rights to retirement for physical disability. His requests for retirement were reviewed by an informal review board of five doctors in the Navy Department's Medical Corps

# 746

who considered plaintiff's case on the merits. Their handling of the case was not arbitrary but in line with a policy of equal treatment for all officers so situated and in their opinion did not warrant sending plaintiff before a retiring board and plaintiff was so advised. The action of the Navy Department in not referring plaintiff to a retiring board in 1944 was in line with the standard practice of not recommending such proceedings in the absence of a condition incapacitating the officer from active duty. While plaintiff may have had Paget's disease, he was not incapacitated for active duty in October 1944. At that time plaintiff enjoyed as good a state of health as the average officer of his age and there had been no essential change in his general health during the period of active duty from 1942 to 1944.

Plaintiff has referred us to the Manual of the Bureau of Medicine and Surgery, Part III, Chapter 2, Section III, paragraph 3221, which contains a definition of the term "line of duty" to govern retiring boards and others concerned with retirement proceedings, which reads as follows:

"An injury or disease incurred during naval service will be considered to have been incurred in line of duty when the individual was on active service in the naval forces whether on duty or authorized leave, unless such injury or disease:

"(a) Existed prior to his entry into the service

"\*     \*     \*     \*     \*     \*"

■ Plaintiff contends that under this definition and under the evidence that he is entitled to a presumption that he incurred Paget's disease while on active duty. We have found that because of the absence of X-rays prior to 1944 it is impossible to ascertain whether plaintiff incurred Paget's disease before or after his entry upon active duty in 1942. Plaintiff presented no evidence to show that the condition present in the plaintiff was actually incurred in his active duty from 1942–1944. The definition above quoted does not strengthen plaintiff's contention on the point raised in that it apparently assumes that the disease or incapacity was incurred during naval service as a basis for the further conditions defining "line of duty." Plaintiff in attempting to establish the presumption that the disease was incurred while on active duty further directs our attention to another provision in the same Bureau of Medicine and Surgery Manual, in pertinent part as follows:

"3222.  Defects Existing Prior to Entry into the Service.

"3222.1. The Navy Department has held generally in the absence of clear evidence to the contrary, that a person was in a sound condition upon his entry into active service except as to defects officially recorded at that time (C. M. O. 2–1941, p. 321). \* \* \* The burden of proof lies upon those who would show that an individual was suffering from a disease prior to his entry into the naval service." (See L.R.N.A.1929, p. 121.)

As we have said, it is impossible to ascertain the date of the onset of the condition of Paget's disease and under the evidence we believe that based on the lack of progression of the disease as revealed in the X-rays in the period of over four years from 1944 to 1948, it is likely that the condition was present in a lesser degree for a corresponding period of time prior to 1944. Plaintiff's own medical witnesses testified to that likelihood and therefore we are of the opinion that while we cannot definitely say that the disease had its inception prior to the time plaintiff entered upon active duty in 1942, the evidence before us is of such a nature that it is not possible to say that plaintiff actually contracted the disease between the years 1942 and 1944 during his service in the Navy.

In Rhodes v. United States, 79 F. 740, 742, where the Court of Appeals of the 8th Circuit was called upon to construe Rev. Stat. Sections 4693 and 4694, 38 U.S.C.A. §§ 152, 155, providing that a soldier who was "disabled by reason of any wound or injury received, or disease contracted, while in the service of the United States, and in the line of duty" shall be entitled to a pension, the court had this to say: "Nor

was there any error in the definition which the court gave to the jury of a 'disease contracted in the line of duty' when he declared that 'the service must have been the cause of the disease, and not merely coincident with it in time.' This is the patent and natural meaning of the language of the statute. It places the service and the discharge of duty in the relation of causes to the injuries and diseases that warrant the grant of pensions. It allows a pension for wounds or injuries received, and for diseases contracted, in the service and in the line of duty. No one would seriously contend that every wound, injury, or disease received or contracted during the term of service is pensionable under this law. * * * The reason is that it would not be caused by his presence in the line of duty. The same rule applies to wounds, injuries, and diseases; for in the law they stand together in a single class. The result is that neither injury nor disease can authorize the grant of a pension under the acts of congress unless it is caused by the presence of its victim in the line of duty when it was received or contracted."

When we previously had occasion to consider these facts upon the demurrer of the defendant to plaintiff's petition, 109 Ct.Cl. 760, 75 F.Supp. 248, we had occasion to consider the various statutes relating to the retirement of Naval Reserve Officers, wherein we considered R.S. §§ 1448, 1452, 34 U.S.C.A. §§ 411, 416, and particularly R.S. § 1453, 34 U.S.C.A. § 417, which provides: "When a retiring board finds that an officer is incapacitated for active service, and that his incapacity is the result of an incident of the service, such officer shall, if said decision is approved by the President, be retired from active service with retired pay."

In considering the above we had this to say: "It is true that these sections require an incapacity at the time of release from active service."

At the time of plaintiff's release from active duty in 1944 he was considered by doctors who saw and had a chance to examine him, as being healthy for a man 64 years of age and fit for active duty, and in the opinions of both the Naval physicians and plaintiff himself, he was not incapacitated for active service at the time of his release.

The plaintiff not only failed to allege this incapacity but since the trial of the case it affirmatively appears from the evidence that incapacity for duty was not present in October 1944. Plaintiff admits that his incapacity did not require the abandonment of duties until January 1, 1947, but says, first, he had a latent disease at the time he was released from active duty which subsequently caused his incapacity and, second, the Navy did not disclose the presence of this condition although known to the Navy at the time of his release.

Plaintiff further says that the quantum of the disability necessary to incapacitate for Naval duty in respect of retirement has been determined by the Navy Department as set forth in Naval Courts and Boards, 1937 edition (reprinted in 1945), section 964, at pp. 429–430, which reads in pertinent part as follows: "The physical disability must be a permanent, incurable disease, or injury of such character as absolutely to disqualify for duty on the active list. Deafness, defective vision, and incurable organic diseases are examples of such a disability. If, however, the disease be curable or of such a character as to yield to treatment, then, even though a cure may require considerable time, the disability is not permanent. The test is: Is the disease or injury curable or incurable? If it be curable within a reasonable time, the officer should not be retired."

The first sentence of this section would seem to be controlling in the case of the plaintiff, where, again, it is said that, "the physical disability must be a permanent incurable disease or injury of such character as absolutely to disqualify for duty on the active list." From what we have already said, the plaintiff was not incapacitated at the time he was placed on the inactive list. Further examination of the above quoted section reveals that a latent condition or disease is not included among the

748

examples of an incapacitating disability. As plaintiff's latent organic condition was not incapacitating at the time of his release, neither was his hearing or vision, defects in both of which had been noted in his Naval medical record as a result of examination throughout the years. In the event that his hearing or vision should degenerate in the years to come to the point of incapacity, plaintiff might say that he has additional grounds for retirement because of the fact that these defects were noted in the various physical examinations as far back as 1922 and 1925.

 There is some intimation by the plaintiff that the failure of the defendant to disclose to plaintiff that some evidence of Paget's disease had been noted at the time of his discharge was unfair and unreasonable on the part of the officials of the Navy. A careful examination of the record discloses that plaintiff was not treated unjustly at the time of his discharge. He was observed and examined on his own request for a kidney condition which was found not to exist and while otherwise symptom-free, X-rays of plaintiff's bone structure revealed some characteristics of Paget's disease which were considered to be non-significant. This cannot be said to be unreasonable and plaintiff's own medical experts agreed that at that time there was nothing to be done. Plaintiff's case was considered on the merits in 1946 and a decision of the Naval review board was reached in line with the general policy of equal treatment of officers so situated. This action cannot be considered arbitrary or discriminatory. Furthermore, it is interesting to note that Paget's disease has not been a cause for retirement for a single officer of the regular Navy to date.

We do not consider plaintiff's incapacity which arose subsequent to his release from active duty sufficient to meet the requirements of the statute. We therefore adhere to our original proposition that the main circumstance and condition under the Naval Aviation Personnel Act of 1940, is that the incapacity to perform duties of the office must occur while the officer is on active duty.

We conclude therefore that plaintiff is not entitled to recover and his petition is dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.