Maddest, Judge,
delivered the opinion of the court:
The plaintiff is and has been at all times here pertinent a Chief Aviation Machinist’s Mate, United States Coast Guard. On or about December 31, 1946, at which time the plaintiff was permanently stationed at the Coast Guard’s Air Station at Elizabeth City, North Carolina, he received orders directing him to proceed to Washington, D. C., and report to the Coast Guard Air Detachment, Washington National Airport, for assignment to temporary duty. He did so report on or about January 2, 1947, and remained there on a temporary duty status until about February or March 1952. At that time the classification of the National Airport Coast Guard *182 Station, was changed from that of a temporary station to that of a permanent station. Thereupon the plaintiff was assigned to that station on a permanent duty status.
The plaintiff sues for a per diem allowance for the period April 1, 1951, to December 31, 1951. The apparent reason for the April 1,1951, date is that the Secretaries of the Armed Services issued Joint Travel Regulations effective on that date, upon which regulations the plaintiff bases his claim.
Our findings show that, whether or not the plaintiff’s status at the Washington station was, in law, temporary, in fact it was not temporary.
In 1947 he bought a house in the vicinity of the Washington station in which he still lived at the time of the trial of this case. He had no expenses for room rentals, meals, street car or taxi fares, laundry, etc., other than those which every person has who lives in the area where he works.
It is the classification by the Coast Guard of the National Airport Station as a temporary station which creates the problem in this case. It seems that that station did not have facilities for overhauling planes, hence they were sent to the Elizabeth City, North Carolina, station for that purpose. For that reason, the Washington station was designated as a temporary station, though it was permanent. And because it was a temporary station, personnel assigned there were assigned in a temporary duty status, though in fact their status was permanent.
We think that the right to a per diem allowance should depend upon the substantial nature of a person’s status, and not upon the form which some other and irrelevant matter has caused it to take. The plaintiff’s orders did not in fact contemplate his further assignment to some other new permanent station or his return to the old permanent station, as the Armed Forces Joint Travel Regulations require for the payment of a per diem allowance.
The plaintiff’s petition will be dismissed.
It is so ordered.
Whitaker, Judge; LittletoN, Judge; and JoNes, Chief Judge, concur.
*183 FINDINGS OF FACT
The court, having considered the evidence, the report of Commissioner C. Murray Bernhardt, and the briefs and argument of counsel, makes findings of fact as follows:
1. The plaintiff, Toimi J. Ronka, is and at all times hereinafter mentioned was a Chief Aviation Machinist’s Mate, United States Coast Guard, serving on active duty.
2. On or about December 31, 1946, while plaintiff was permanently stationed at the United States Coast Guard Air Station, Elizabeth City, North Carolina (hereinafter referred to as the Elizabeth City Station), he received orders directing him to proceed to Washington, D. C., and report to the Coast Guard Air Detachment, Washington National Airport (hereinafter referred to as the National Airport Station), on January 2, 1947, for assignment to temporary duty. The orders further authorized him to travel by privately owned conveyance with reimbursement for travel at the rate of three cents per mile.
3. The orders did not provide for plaintiff’s further assignment to a new permanent station nor did they provide for a return to his old permanent station.
4. Section 3003 of the Armed Forces Joint Travel Regulations provides:
2. TemporaRt Duty. The term “temporary duty” means duty at a location other than permanent station to which a member of the uniformed services is ordered to temporary duty under orders which provide for further assignment to a new permanent station or for return to the old permanent station.
5. The National Airport Station was classified as a temporary station by the Coast Guard from about 1933-1934 until about February 1952, when it was reclassified as a permanent station.
6. Plaintiff reported as directed by his orders on or about January 2, 1947, and remained on a temporary duty status at the National Airport Station until about February or March 1952, when he was assigned there on a permanent duty status.
7. The United States Coast Guard did not assign personnel to permanent duty at a station classified as temporary *184 but assigned personnel to such, temporary stations in a temporary duty status, and for this reason plaintiff’s assignment to the Coast Guard Aircraft Detachment at the National Airport was in a temporary duty status as specified in plaintiff’s original orders of assignment.
8. Plaintiff’s duties from January 2, 1947, to the date of the trial were those of “plane captain” of the aircraft located at the National Airport Station, a position involving command and supervision of the mechanics, radiomen, and other ratings assigned to the aircraft. He had certain duties and responsibilities assigned to him by the pilot while the aircraft was in flight. His rank of Chief Aviation Machinist’s Mate was the highest enlisted rank in the Coast Guard.
9. The performance of plaintiff’s duties while assigned in a temporary duty status to the National Airport Station all occurred there, except while he was away sporadically on airplane trips in connection with his official duties, and plaintiff performed no duties at the Elizabeth City Station.
10. The reclassification in 1952 of the National Airport Station and the consequent change of duty status for plaintiff from temporary to permanent assignment there involved no change in duties or functions for the plaintiff.
11. From April 1, 1951, to December 31, 1951, plaintiff received station allowances (i. e., allowances in lieu of subsistence and quarters) in the amount of $510, but was not paid any temporary duty per diem allowances except when on trips away from Washington. His wife also received a “family allowance” to which the Government contributed approximately $67.50 per month and the plaintiff contributed approximately $22 per month from his pay.
12. Plaintiff received no transportation for his dependent who traveled to the National Airport,Station from the Elizabeth City Station about one month after he did, nor transportation for his personal household possessions which he had shipped. No personal belongings were left at the Elizabeth City Station.
13. Except for paying rent for living accommodations at both places for January 1947, plaintiff experienced no duplication of expense because of . his temporary assignment to the National Airport Station and his concurrent permanent assignment to the Elizabeth City Station. He re *185 ceived the same allowance at the National Airport Station which he had received during his physical presence at the Elizabeth City Station, except for an additional sum for subsistence resulting from the fact that mess facilities were not available at the National Airport Station, whereas they had been at the Elizabeth City Station.
14. During his temporary duty assignment at the National Airport Station, plaintiff’s pay was received through Coast Guard Headquarters, Washington, D. C.; his health records were maintained at the Elizabeth City Station; and when he obtained leave he made a request for it through his Commanding Officer at the National Airport Station, who submitted it to the Elizabeth City Station for approval.
15. In March 1949, plaintiff’s term of enlistment expired and he was reenlisted at the Elizabeth City Station.
16. The usual length of a tour of duty at a permanent duty station in plaintiff’s branch of the service is three or four years.
17. Section 4202 of the Joint Travel Regulations provides :
The per diem allowance is designed to cover room rentals, meals, tips, street car or taxi fares (other than to and from station, wharf, or landing field), laundry, and other similar incidental expenses.
18. In 1947 plaintiff purchased a house in the vicinity of the National Airport Station in which he lived at least until the date of the trial, and which at all times involved in the claim was listed as plaintiff’s residence in the telephone directory.
19. Plaintiff had been permanently assigned to the Elizabeth City Station in March 1946, and he lived in an apartment without a lease in the vicinity of that station for approximately nine months until his transfer to the National Airport Station.
20. Plaintiff claims a per diem allowance under the Joint Travel Regulations for the period from April 1, 1951, to December 31, 1951, while assigned to temporary duty at the National Airport Station, less the station allowances received by him in lieu of subsistence and quarters for the said period, which amount to $1,028.25. Plaintiff made claim for the said sum subsequent to the effective date of the Joint Travel Regulations, which claim was denied by the General Accounting Office on April 21,1952.
*186 CONCLUSION OF LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and the petition is therefore dismissed.