**REMALEY v. UNITED STATES.**
No. 40–54.

United States Court of Claims.
July 13, 1954.

Paul R. Harmel, Washington, D. C., for plaintiff.

Gordon F. Harrison, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiff sues for retired pay to which he claims to be entitled because of disability resulting from an illness which he incurred while serving as a Reserve officer in the Army. On April 17, 1952, the plaintiff, then a Colonel in the Organized Reserve Corps of the Army of the United States, was ordered to report at the Command and General Staff School at Fort Meade, Maryland, for a tour of duty of 32 days, from April 21 to May 23, 1952. On May 12, while on that tour of duty he suffered an attack of cerebral thrombosis which was incurred in the line of duty, was the proximate result of his performance of duty, caused him a 30 percent disability and rendered him physically unfit to perform the duties of his rank.

The Secretary of the Army determined that the applicable statute, the Career Compensation Act of 1949, did not authorize the payment to the plaintiff of retirement pay. Subsections (a), (b), and (c) of section 402 of that Act, 63 Stat. 816–818; 37 U.S.C.A. § 272(a), (b), and (c) must be considered in determining whether the Secretary was right. Subsections (a) and (b) authorize the payment of retirement pay to Reserve officers who incur physical disability when on "extended active duty" for a period

in excess of 30 days. The disability covered by these subsections may be the result of either an illness or an injury. The difference between subsections (a) and (b) as to their scope is not material in this case. The Government says that subsections (a) and (b) do not apply to the plaintiff's situation because, although he was ordered to duty for a period of 32 days, the duty to which he was ordered was not "extended active duty", within the meaning of these sections, but was training duty.

To this contention the plaintiff answers that the duty in which he was engaged when his illness occurred was not, in fact, training, but active duty, although his orders were for "Active Duty Training". His assignment was to teach courses in tactics and strategy. He was qualified to do so by graduation from the General Staff College at Fort Leavenworth, Kansas, and by a short Instructor-Training Course at Fort Leavenworth which he took in December 1951, in preparation for the assignment which he was shortly to receive to teach at Fort Meade.

■ In an affidavit filed herein the plaintiff says that his teaching, the training of others, was exactly the same work for which other teachers were ordered to "extended active duty", and that he was told that the reason his orders were for "training" were budgetary reasons, there being funds available for that purpose. The Government points to the orders and says that they are conclusive. We think not. We held in Ronka v. United States, 127 Ct.Cl. 180, that a soldier could not collect per diem when in fact he was permanently assigned to a station, though his orders, for a reason of Coast Guard housekeeping, were orders for temporary duty at the station. We think that evidence must be taken as to whether the plaintiff's orders for training duty were consistent with his actual teaching duty.

The plaintiff makes a further contention which, if sustained, would make immaterial the question whether his duty was training or otherwise. He says that any duty which is to last more than 30 days is "extended active duty". This contention makes necessary a further consideration of the statutes. As we have said, subsections (a) and (b) of section 402 of the Career Compensation Act of 1949 authorizes retirement pay for Reserve officers who incur disability while on orders to "extended active duty for a period in excess of thirty days". Whether the disability results from disease or from injury is immaterial. Then subsection (c) of section 402 covers personnel "other than those members covered in subsections (a) and (b) of this section" but gives them retirement pay only for physical disability resulting from an injury. These other persons, then, get no retirement pay for disability resulting from a disease. And who are these persons "other than those members covered in subsections (a) and (b)"? The statute does not define them. But they would seem to include persons, even on active duty, if the period of active duty is 30 days or less, and persons on inactive duty training, such as for weekly drills. Do they include persons on active duty for training, even though the period of duty is more than 30 days? The Government says they do, and that therefore subsection (c) is the only subsection applicable to the plaintiff, and he does not qualify under that because his disability resulted from a disease and not from an injury.

■ We do not agree with the plaintiff's contention that any duty lasting for more than 30 days is "extended active duty" within the meaning of section 402. We think that "extended active duty" has a distinct statutory meaning, and does not include duty properly designated as training duty, no matter how long the training duty continues.

The Act of April 3, 1939, 53 Stat. 557, relating to Army Reservists, and the practically identical provisions of section 4 of the Naval Aviation Personnel Act of 1940, 54 Stat. 864, 34 U.S.C.A. § 855 c-1, relating to Navy Reservists, pro-

vided for retirement pay for persons suffering disability, in the line of duty, from disease or injury incurred in extended active service for more than 30 days. As these statutes were administered, they did not cover reservists performing training duty, even though under orders for more than 30 days. See Navy Department Court Martial Orders No. 4–1948, pp. 134–139, 5–1950, p. 209. The Act of June 20, 1949, 63 Stat. 201, 10 U.S.C.A. § 456, amended the above two statutes.

Section 1 of the Act of June 20, 1949, said:

"That section 4 of the Naval Aviation Personnel Act of 1940, as amended (U.S.C., title 34, sec. 885 c–1), is amended to read as follows:

"Sec. 4. All officers, nurses, warrant officers, and enlisted men of the United States Naval Reserve or United States Marine Corps Reserve, who—

"(1) if called or ordered into active naval or military service by the Federal Government for extended naval or military service in excess of thirty days, suffer disability or death in line of duty from disease while so employed; or

"(2) if called or ordered by the Federal Government to active naval or military service or to perform active duty for training or inactive-duty training for any period of time, suffer disability or death in line of duty from injury while so employed; shall be deemed to have been in the active naval service during such period, and they or their beneficiaries shall be in all respects entitled to receive the same pensions, compensation, death gratuity, retirement pay, hospital benefits, and pay and allowances as are now or may hereafter be provided by law or regulation for officers, warrant officers, nurses, and enlisted men of corresponding grades and length of service of the Regular Navy or Marine Corps: * * *."

Section 2 of the Act of June 20, 1949, similarly amends the existing statute for Army personnel. Subsections (1) and (2) of these sections plainly distinguish between "active service" and "active duty for training", subsection 1 covering disability resulting from disease when the person was in active duty under orders for more than 30 days, and subsection (2) covering disability resulting from injury no matter what the kind of service or the length of time. The fact that only "active service" is mentioned in subsection (1) while in subsection (2) active service, active duty for training and inactive duty training are all mentioned, shows that they were regarded as distinct types of service, and were differently treated in the statute.

Within a few months after the Act of June 20, 1949, the comprehensive codification known as the Career Compensation Act of 1949, supra, was enacted, effective October 1, 1949. Its subsection (c) of section 402, instead of naming the different types of services for which retirement pay could be had only for disability resulting from injury, as had been done in subsection (2), quoted above, in the Act of June 20, 1949, used the shorter expression "other than those members covered in subsections (a) and (b)". There is no reason to suppose that an important change in what had been enacted in June was contemplated in the October codification. A rather casual reference by Admiral Fechteler, in the hearings before the Senate Committee on the Armed Services, is cited by the plaintiff, but we see little significance in it. If taken too literally, Admiral Fechteler's statement is demonstrably wrong, since subsection (c) of section 402, which he was explaining, covers more than those on inactive status. The colloquy appears in Hearings before the Senate Committee on the Armed Services with respect to H.R. 5007, 81st Congress, 1st Sess., pp. 302–303.

Our conclusion on the plaintiff's second contention is that if the plaintiff

.was on training duty, he is not entitled to recover. We leave for determination upon further evidence and argument the question whether he was, in fact, on training duty.

The motions of both parties for summary judgment are denied.

It is so ordered.