amount of $45,894.46, with interest as provided by law.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.

Clarence A. REMALEY
v.
The UNITED STATES.
No. 40–54.

United States Court of Claims.
April 3, 1956.

Paul R. Harmel, Washington, D. C., for the plaintiff. Geiger & Harmel, Washington, D. C., were on the brief.

John R. Franklin, Washington, D. C., with whom was Asst. Atty. Gen. Warren E. Burger, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

This case was before us at an earlier stage, on motions of both parties for summary judgment. We overruled both motions and sent the case to trial before a commissioner of this court 122 F. Supp. 679, 129 Ct.Cl. 159. We decided that if the tour of duty during which the plaintiff incurred his disabling illness was not training, he was entitled to the benefits of subsection (a) or (b) of section 402 of the Career Compensation Act of 1949, 37 U.S.C.A. § 272(a, b), which subsections allow retirement pay for any disability incurred in military service, and that he was not limited to the benefits of subsection (c), which allows retirement pay only for disabilities resulting from injuries. See Gwin v. United States, Ct.Cl., 137 F.Supp. 737, for a fuller discussion of the distinction.

In our earlier decision in this case we said that Congress had, in the Act of June 20, 1949, 10 U.S.C.A. § 456, 34 U.S.C.A. § 855c–1, recognized a distinction between "active service," and "active duty for training", which distinction justified the Executive limiting those engaged in the latter activity to the benefits of subsection (c). We refer to our earlier decision for an extended discussion of the statutory provisions.

The plaintiff was a Reserve officer in the Army. He had had some 20 years of military service, some 15 years of which had been active service. He was a good teacher of military tactics and, in the latter part of 1951, the administrative officers of the Command and General Staff School of the Second Army, at Fort Meade, Maryland, telephoned to the plaintiff who lived at Annapolis, telling him that they wanted him to teach in the school as much as he could find time to do so in the early months of 1952. He expressed willingness and was told that it would be necessary for him to take a short refresher course at Fort Leavenworth. He had had the Fort Leavenworth course some years before. He took the refresher course for ten days in December 1951, and received a certificate showing completion of the course. The course was entitled "Instructor Training Course for Special Associate Course, Command and General Staff." Its stated objective was "to provide instruction in the methods of teaching applicable to the Special Associate Course."

The paper which it was necessary for the plaintiff to sign before taking up his teaching duties at Fort Meade was prepared for his signature by the Army. It said that he asked to be ordered to a short tour of active duty training. An order, using this same language and designating January 28 to February 15 as the period, was issued to the plaintiff. He taught at the Fort Meade school during that period, being the principal instructor in some of the courses, with another instructor as his assistant, and vice versa in other courses.

On a similar request and similar orders he began another tour of teaching, which was to have lasted from April 21 to May 23, 1952, a period of 33 days. On May 12 he suffered a cerebral thrombosis, which is the disability upon which this suit is based.

The applicable Army regulations are quoted in our findings and will not be repeated here. They show that it was the general practice of the Army to use the form of application and orders which were used in the plaintiff's case, whether the officer was coming to the school at the request of the Army to teach, or was coming at his own request to be taught. The practice was not invariable, as there were eight officers out of the 40 who were connected with the faculty of the school in 1951 and 1952 who were on orders which did not use the wording "training".

We think the intent of Congress in drawing a distinction between "active duty for training," and other active duty, was to withhold from those Reserve officers who were being trained, at Government expense, to be soldiers, or better soldiers, some of the benefits which the statutes gave to those who were on regular active duty as soldiers. The plaintiff

was not being trained to be a soldier, or a better soldier, in that sense. He already knew what he was called upon to teach to others. The witnesses for the Government were quite right, of course, in saying that a soldier or officer throughout his career is always learning, hence is always in training. But that argument proves too much. Probably no other soldiers learned as much in World War II as General Eisenhower in Africa and Europe, and General MacArthur in the Pacific.

■■ As we held in the prior proceeding, the language in which the plaintiff's orders were couched, and the appropriation from which the costs of the school were paid, are not conclusive. The question is, Was the plaintiff on a tour of "active duty for training" within the meaning of the applicable statutes? We hold that he was not.

The Physical Evaluation Board on October 21, 1952, found that the plaintiff was unfit to perform the duties of his office by reason of physical disability incurred in the performance of his duty. It rated his disability at 30 percent. The Secretary of the Army disapproved these findings because the disability resulted from a disease, and not from an injury, and was, therefore, not covered by subsection 402(c) of the Career Compensation Act. This was a decision that the plaintiff was not on extended active duty, within the coverage of subsections 402(a) or (b) of that Act.

The Secretary of the Army's interpretation of the statutes was erroneous. The plaintiff is entitled to recover, and judgment will be entered to that effect. The case will be returned to the commissioner of this court pursuant to Rule 38(c), Court of Claims Rules, 28 U.S. C.A. to determine the amount of recovery.

It is so ordered.

JONES, Chief Judge, and WHITAKER and LITTLETON, Judges, concur.

LARAMORE, Judge (concurring).

I concur in the majority opinion for the reason that in this case there is no controversy as to the fact that plaintiff suffered disability, while serving on active duty as a Reserve officer under competent orders of the Secretary of the Army, and that he was disabled by a disease which was the proximate result of the performance of that duty. The Secretary of the Army disapproved of the findings of the board to the extent that retirement pay was denied because he thought the plaintiff was not on "extended active duty * * * in excess of thirty days," within the meaning of sections 402(a) and (b) of the Career Compensation Act of 1949, 63 Stat. 802, 816–818. The action of the Secretary indicates that he thought that the only right plaintiff had to retirement pay was under that act.

The Act of June 20, 1949, 63 Stat. 201, 202, 10 U.S.C.A. § 456, which is an amendment to the Act of April 3, 1939, provides that (1) if any officer, other than a regular officer, is called or ordered into active military service in excess of 30 days, and (2) if called for active-duty training, or inactive-duty training, for any period of time, may be granted retired pay if disabled; in the first case from disease, and in the second case from injury. That act says that in the cases of officers called or ordered under the conditions outlined therein, the officers shall be deemed to have been in the active military service during such period.

It, therefore, becomes unnecessary for the court in this case to review the nature of the duty. It would seem to me that a court should not, at least until it is necessary, review the nature of the duty to which an officer is assigned once he has been called to duty under authority of Congress.

While the parties have briefed this case as though the only authorization for retirement was the Career Compensation Act of 1949, *supra*, this could be true only if the Act of June 20, 1949, were repealed. In Updike v. United

States, Ct.Cl., 132 F.Supp. 957, decided July 12, 1955, we rejected defendant's contention that the Act of June 20, 1949, had been repealed or superseded by the Career Compensation Act of 1949 and gave judgment under the former act.

In the present case, all the conditions precedent to awarding retirement pay under the Act of June 20, 1949, seem to have been met except an approval of the award by the Secretary of the Army. His disapproval was under a misapprehension of the law. Under previous decisions of the court the failure of the Secretary to approve, if approval was necessary, on the circumstances here disclosed should be ignored. The only proper decision under the applicable Act of June 20, 1949, could be that retirement pay should be granted.