Whitaker, Judge,
delivered the opinion of the court:
Plaintiff, an Air Force reserve officer, sues for retired pay, claiming that he was totally and permanently disabled when he was separated from active service on December 20,1945. He made no request for retirement for physical disability at the time of his separation from active service, but on October 21, 1948, while still on the inactive list, he requested retirement for physical disability. This was denied. Plaintiff says that this action, as well as the denial of his request for relief by the Air Force Board for Correction of Military Records, was arbitrary and capricious, and contrary to law and, hence, this court has jurisdiction to entertain his petition.
Since plaintiff’s claim for retirement was denied by the Air Force on November 23, 1948, plaintiff’s petition is in time and, if this denial was arbitrary and capricious or contrary to law, we have jurisdiction. Dismuke v. United States, 297 U.S. 167; San Millan v. United States, 139 C. Cls. 485.
Whether or not it was arbitrary and capricious is the first question to be decided. If that is decided in the negative, the decision of the Secretary of the Air Force is final, and we will not need to consider any other question raised.
Plaintiff enlisted in the Air Corps, Army of the United States, on March 18,1942. When he was released to inactive duty on December 20, 1945, he held the rank of First Lieutenant. During the intervening period, plaintiff had served as a navigator with the Air Transport Command, stationed first in Memphis, Tennessee, and later in Calcutta, India. His basic duties, while stationed at Memphis, consisted of navigating bomber and transport-type aircraft from the United States to the Africa-Middle East, European, and Asiatic Theaters of Operations. While stationed in Cal *816 cutta he flew over the “Hump” to various parts of the Far East.
While in Calcutta in August 1945, plaintiff experienced pains down the back of his thighs. After treatment by the flight surgeon at the dispensary, he continued to have pain and, hence, on September 21, 1945, he was transferred to the hospital with a diagnosis of “bilateral sciatic pain.” At the hospital x-rays were taken. They indicated that the fifth lumbar vertebra had slipped forward on the first sacral vertebra. This is called “spondylolisthesis”. The doctors believed that this was due to a congenital failure of fusion of the neural arch, and was not significant. They finally diagnosed plaintiff’s condition as a “strain, lumbo-sacral, mild, cause undetermined.”
On October 5, 1945, plaintiff’s condition having improved, he was released from the hospital and he returned to active duty.
Almost immediately thereafter plaintiff was returned to the United States, since he had enough “points” for release from active duty.[1] He was given a final physical examination at Lincoln Army Airfield, Nebraska, on October 25, 1945, which included x-rays of the sacroiliac. At this time' he complained of pain across his lower back and legs. The final diagnosis was “sciatica, right, moderately severe, cause probably traumatic” and “arthritis, sacroiliac, chronic, mild, osteoarthritis, cause unknown.” In evaluating this diagnosis, the two examining physicians determined that plaintiff was “qualified for general service with waiver of minor defects.”
During the course of his service he was given periodic physical examinations, in May 1942, October 1942, April 1944, and February 1945, and they showed plaintiff to be in good physical condition. Plaintiff was a navigator on long trips in airplanes, and worked in cramped quarters, in consequence of which from time to time he experienced stiffness in his right arm and shoulder, but this was not considered of sufficient moment to note on the record of his physical *817 examinations. His visit to the hospital two months before his final physical examination, preliminary to release to inactive duty, is the first medical record of a complaint of pains in his legs or elsewhere. Hence, it is not surprising that plaintiff registered no protest over the doctors’ determination, at the time he was released to inactive duty, that he was qualified for general duty with waiver of minor defects.
Plaintiff, however, says some unidentified captain in the Medical Corps told him at the time of his release to inactive duty that he could not be sent before a retiring board because he was a reserve officer. This testimony should not have been received in evidence because of plaintiff’s failure to identify the officer alleged to have made this statement, thus affording the defendant no opportunity to dispute it. It is strange that any such statement would have been made, since the physical examinations disclosed no reason for sending plaintiff before a retiring board; he had been found fit for active duty, with only minor defects. It is immaterial, anyway, since plaintiff cannot predicate a case on anything that happened at this time, since it was eight years before the petition was filed in this court.[2]
On April 2S, 1946, the Veterans Administration rated plaintiff as 20 percent disabled for sciatica and 10 percent for arthritis. This disability was based on the findings of the physical examinations given plaintiff at the time of his separation from the service.
In 1946 and 1947 plaintiff began to have some trouble with his knees. He received treatment from the Veterans Administration, and on their advice moved to a warmer climate about a year and a half later. In February 1948 he received a physical examination from the Veterans Admin *818 istration, which made a diagnosis of “hydro-arthrosis right knee, cause .undetermined; spondylolisthesis, mild; arthritis, sacroiliac joints, mild.” These medical terms sound ominous, but in the opinion of the Veterans Administration they merited a disability rating of only 10 percent, and, accordingly, his sciatic pains having disappeared, his rating was reduced from 30 percent to 10 percent.[3]
The foregoing is the extent of the record before the Director of Military Personnel, Department of the Air Force, when he wrote plaintiff on November 23,1948, that his record did not indicate a permanent incapacitating defect when he was released from active duty. These records amply justified him in refusing to send plaintiff before a retiring board. His action was not arbitrary or capricious.
Plaintiff took no further action until December 1952, when he requested the Board for the Correction of Military Records to review his case.
In the meantime, plaintiff was again examined by the Veterans Administration in 1949, and was found to have sciatic neuritis and mild hydro-arthrosis of the right knee. In 1950 plaintiff was examined by the Air Force to determine whether he was physically qualified for service in the Korean conflict and was found disqualified because of “arthritic knees.” Because of this disability plaintiff was transferred from the inactive reserve to the Air Force Honorary Reserve.
In 1951 the Veterans Administration again examined plaintiff, when, for the first time his trouble was diagnosed as rheumatoid arthritis of the spine and knees. The arthritis in the spine and left knee was considered mild, while that in the right knee was considered moderately severe. These findings were confirmed by Dr. Jesse W. Hofer, of Houston, Texas, a private physician, who also treated and examined plaintiff during this period.
Rheumatoid arthritis and spondylitis, a spinal variant of rheumatoid arthritis, are basically defined as a chronic disease of the joints. The onset is generally insidious and presents a difficult problem of diagnosis. The early symptoms are quite frequently mislabelled as muscular rheuma *819 tism, fibrositis, lumbago, chronic low back strain, idiopathic sciatica, or even kidney disease. Ahnost invariably the first complaints are referred to the lower back and consist of episodes of aching and stiffness. In the vast majority of cases the sacroiliac joints are the first to be affected. See Gorwo&'s Arthritis, 5th ed. 1953. Hence, it may be that the earlier diagnoses of plaintiff’s ailment were erroneous, and that the stiffness and pains in plaintiff’s back and legs in August and October 1945 were in fact symptoms of rheumatoid arthritis.
Army Regulation No. AR 605-10, May 26, 1944, applicable to commissioned officers in the Army Air Corps, provides in section IV, paragraph 20, that the physical standards for appointment, promotion, entry on active duty, and for retention of commission are those prescribed for the Officers Reserve Corps in AR 40-100 and AR 40-105. Under these latter regulations both rheumatoid arthritis and osteoarthritis were cause for rejection of an application for a commission. However, Tentative War Department Technical Manual 12-245, October 1, 1945, provided:
b. Due regard will be given to the provisions of the above-mentioned regulations [AR 40-100 and 40-105] in considering the physical qualifications of officers for retention on active (general) service. However, in this connection, the mentioned regulations will not be as strictly interpreted as for appointment or entrance on active duty.
c. Thus, officers may be found capable of performing active (general) service even though they have diseases, injuries, or infirmities which would disqualify them for original appointment, provided such diseases, injuries or infirmities are of such a nature and degree as not to affect adversely the performance of active (general) service (including overseas duty) considering the individual’s age, grade, branch and MOS.
It follows, therefore, that the nature and degree of the disease must be considered in order to determine eligibility for retirement for physical disability,[4] although the presence *820 of the disease even in mild form is cause for rejection of an application for a commission. The reasons for a difference in the requirements for acceptance of an application for a commission and for retirement for physical incapacity are obvious.
The degree of plaintiff’s disease in 1945, whether considered osteoarthritis or rheumatoid arthritis, was mild and relatively asymptomatic. Under the regulations, we cannot say as a matter of law that the Air Force was arbitrary and capricious in denying plaintiff’s claim. As plaintiff’s witness, Dr. Hofer, testified, the progress and effect of arthritis varies from patient to patient. In some patients the disease progresses very rapidly, and at its onset is markedly incapacitating, while in others its progression is very slow and does not become incapacitating for many years, and sometime never. In the light of this fact, the armed services, as a matter of general policy, do not retire officers for mild osteoarthritis or rheumatoid arthritis, especially if there are no objective symptoms of the disease. Cf. Army Regulation No. SR 40-120-1, October 9, 1958. From the facts in this case it definitely appears that plaintiff’s arthritis was in its initial stage and mild.
Therefore, even assuming that the plaintiff had rheumatoid arthritis at the time of his release from active duty, we cannot say as a matter of fact that the Correction Board’s determination, that no injustice has been done plaintiff, was in error. Wales v. United States, 132 C. Cls. 765; San Millan v. United States, supra; Palluconi v. United States, 136 C. Cls. 190; Lemly v. United States, 117 C. Cls. 365. The nature and the degree of the disease at the time of plaintiff’s release to inactive duty were such that the Board’s determination seems fully justified.
In our opinion, this court can afford plaintiff no relief. Under the facts presented only Congress can do so.
Plaintiff’s petition will be dismissed.
It is so ordered.
Laramore, Judge, and MaddeN, Judge, concur.

 Personnel not In the regular forces were returned from overseas according to the length of such service and other factors, called, In military parlance, “points”.

 Plaintiff also presented proof attempting to show that the Army Air Corps In 1945, In determining what constituted “physical disability for active service”, applied a different standard to reserve officers than to regular officers and thereby discriminated against the former. However, as we stated above, plaintiff’s claim must be based on the administrative determinations made In 1948 and 1953. There Is no evidence in the record which would indicate that the standard applied by the Director of Military Personnel and the Air Force Board for the Correction of Military Records was any other than that authorized by the statute and the applicable regulations. This evidence, therefore, is also immaterial.

 Later, In 1951, this disability rating was increased to 40 percent.

 This was also the test applied In Proper v. United States, 139 C. Cls. 511, and Patterson v. United States, 141 C. Cls. 435. Those cases were concerned with multiple sclerosis, the mere presence of which renders an officer unfit to be entrusted with command, because of the ever-present possibility of an attack that would completely incapacitate the officer while the attack lasted.