James D. MORROW

v.

The UNITED STATES.

No. 129-57.

United States Court of Claims.
March 7, 1962.
Rehearing Denied June 6, 1962.

Fred W. Shields, Washington, D. C., for plaintiff. King & King and Evan Howell, Washington, D. C., on the brief.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen., William H. Orrick, Jr., for defendant.

LARAMORE, Judge.

Plaintiff, a Reserve Lieutenant Colonel, was called to a tour of duty in 1947. He claims that during this tour of duty he contracted multiple sclerosis and that, on the termination of this duty on August 1, 1948, he should have been retired for physical disability and, accordingly, alleges he is entitled to disability retirement pay from that date.

The pertinent facts briefly are these: Plaintiff served as a member of the Officers' Reserve Corps of the Army from January 13, 1941, to June 14, 1946. On September 5, 1947, he was ordered to "active * * * training" at the Military Police School. He was to attend the advanced class starting October 13, 1947, and revert to an inactive status on August 1, 1948.

The orders under which plaintiff reported and served until his reversion to an inactive status on August 1, 1948, read as follows:

"1. By direction of the President you are ordered to active duty training and assigned to Org Res Tng Det, Headquarters, Eastern Pennsylvania Military District, for record purposes only, with station as indicated in (a) below:

a. Station ................... Carlisle Barracks, Pa.
b. School ..................... The MP School
c. Class No. and Course ........ #1, MP Officers Advanced
d. Starting date of class ........ 13 October 1947
e. Date of rank ................ 24 May 1946
f. Effective date of active duty .. 6 October 1947
g. Date you revert to inactive
    status ................... 1 August 1948
h. Days of leave authorized ..... 22

\*   \*   \*   \*   \*   \*   \*   \*   \*

The travel directed is necessary in the military service. Permanent change of station. 2181505 852–1601 P5 11–01:02 S18–102. \* \* \*"

The symbols in the above order relate to the following:

2181505: Appropriation symbol for "Organized Reserves, 1948"
852: Operating agency code for Second Service Command, fiscal year of obligation 1948 designated by digit 8.
1601: Allotment number.
P511: Project account number for "Pay, Travel, and Allowances, and Other Expenses of Reserve Personnel Called to Duty for Training Purposes."
01: Object class—personal services.
02: Object class—travel.
S18–102: Headquarters, Second Army, Fort George G. Meade, Md.

———◆———

Upon his release, plaintiff was given a final-type physical examination. He called the examiner's attention to his difficulty with double vision and his bladder ailment, but the report of medical examination is negative concerning the claimed conditions. A diagnosis of astigmatism was made, and the examiner concluded that the individual was "not permanently incapacitated for general service."

After completing the above tour of duty, plaintiff returned to his former position as a sales representative of Max Chipen & Sons. However, in June of 1949, he resigned from that position because of ill health.

Upon completion of duty, plaintiff applied for 90 days' active duty training, and was advised on June 17, 1949, that his application could not be considered due to lack of funds. Plaintiff then made application for two weeks' active duty, effective September 1, 1949, and orders were issued but canceled because plaintiff stated he was unable to accept due to civilian employment.

In early March of 1948, while on duty, plaintiff experienced and was treated for double vision and returned to duty. Plaintiff also experienced some bladder trouble in April of 1948. Neither the vision defect nor the bladder condition prevented plaintiff from performing his assigned duties, and he was able to complete his school course.

Plaintiff subsequently suffered from double vision and bladder trouble and had a complete neurological examination in November of 1949. The doctor's impression was a lesion in the brain stem region, but that he should be investigated for a tumor or evidence of metastatic disease.

On June 23, 1950, Lt. Comdr. R. G. Berry, at the Naval Hospital in Philadelphia, as a result of several examinations, commented that the possibility of a brain stem tumor is present.

In June and July of 1951, plaintiff was examined by doctors of the Veterans Administration. These doctors observed that "multiple sclerosis must be considered."

Plaintiff was in the Veterans Administration Hospital from January 7 to January 16, 1952, and the first definite diagnosis of multiple sclerosis was made.

In the opinion of Dr. Albert J. Glass, Colonel, United States Army Medical Corps, a witness for defendant in this action, if the plaintiff had remained on active duty he would have been hospitalized by November 1949 and retired in 1950 for some central nervous system disease. Plaintiff applied for physical disability retirement on October 2, 1950, and was advised by the Secretary of the Army that his entire record had been reviewed by the medical authorities and the records failed to reveal the presence of any defect which was permanently incapacitating for general service while on active duty.

A Physical Evaluation Board, on November 2, 1954, made the following diagnosis: Sclerosis, multiple; approximate date of origin, March 1948. The Board further found that "the individual became Physically Unfit to Perform the Duties of his Office, Rank or Grade on 6 October 1954." The Board recommended permanent retirement with 30 percent disability.

Plaintiff applied to the Board for Correction of Military Records for a correction of his record to reflect a discharge due to physical disability on July 31, 1948.

The Correction Board requested an opinion of the Surgeon General who replied:

"The finding of the physical evaluation board, 2 November 1954, Valley Forge Army Hospital, that Lt. Colonel James D. Morrow, O–194757, at the time of separation from the service had a physical disability which would have warranted his retirement for such physical disability is concurred in."

The Correction Board then concluded:

"1. That the applicant was not permanently physically disqualified for further military service at the time of his relief from active duty on 1 August 1948.

"2. That although he may have been treated for a condition during this period of service which was later attributed as being the origin or inception of multiple sclerosis, it was not disabling to an extent which would have warranted his retirement for physical disability at that time.

"3. That no error or injustice is shown in the applicant's release from active duty, not by reason of physical disability, on 1 August 1948 under the laws, rules, regulations and policies then in effect."

Accordingly, the Board recommended that plaintiff's application be denied. The Secretary of the Army, on February 10, 1955, approved the recommendation of the Correction Board in denying plaintiff's application.

In this posture of the case, the defendant contends that the duty performed by the plaintiff was not extended military service within the purview of any statute under which plaintiff may claim entitlement to retirement pay for disability. Defendant also contends that the decision of the Board for Correction of Military Records in denying plaintiff's application was neither arbitrary nor capricious. However, for reasons that will be obvious, we do not reach the latter contention.

To recover in the instant case plaintiff's action must come within the purview of section 5 of the Act of April 3, 1939, 53 Stat. 555, 557, or section 2 of the Act of June 20, 1949, 63 Stat. 201, 202.

Section 5 of the Act of April 3, 1939, supra, provides:

" * * * The President is hereby authorized to order annually, * * for a period of not more than one year for any one officer, for active duty with the regular army, such numbers of Reserve officers, in the grade of second lieutenant, as are

necessary to maintain on active duty at all times not more than one thousand Reserve officers * * *; *Provided further*, That all officers, warrant officers, and enlisted men of the Army * * *, if called or ordered into the *active military service* by the Federal Government for *extended military service in excess of thirty days*, and who suffer disability or death in line of duty from *disease* or *injury* while so employed shall be deemed to have been in the active military service during such period and shall be in all respects entitled to receive the same pensions, compensation, retirement pay, and hospital benefits as are now or may hereafter be provided by law or regulation for officers and enlisted men of corresponding grades and length of service of the Regular Army. [Italics supplied]"

Section 2 of the Act of June 20, 1949, supra, provides:

" * * * all officers, warrant officers, * * * of the Army of the United States, * * * who—

"(1) if called or ordered into the active military service by the Federal Government for *extended military service in excess of thirty days* suffer disability or death in line of duty from *disease* while so employed;

\* \* \* \* \* \*

"shall be deemed to have been in the active military service during such period and shall be in all respects entitled to receive the same pensions, compensation, death gratuity, retirement pay, hospital benefits, and pay and allowances as are now or may hereafter be provided by law or regulation for officers and enlisted men of corresponding grades and length of service of the Regular Army or the Regular Air Force. [Italics supplied]"

Section 5, supra, provides for retirement pay if the officer is " * * * called or ordered into the active military service by the Federal Government for extended military service in excess of thirty days * * *."

Section 2, supra, provides for retirement for disability due to disease if called or ordered into active military service by the Federal Government for extended military service in excess of 30 days.

While plaintiff's tour of duty was in excess of 30 days, to qualify for retirement pay under either of the above statutes, his duty must be considered as extended military service. In this respect, it is clearly evident from his orders that plaintiff was ordered to *"active duty training"* in the Military Police School. [Italics supplied]

This court, in the case of Remaley v. United States, 122 F.Supp. 679, 129 Ct.Cl. 159, held that reservists performing training duty did not qualify for retirement even though the officer was under orders for more than 30 days. As a matter of fact, the court stated, 129 Ct.Cl. at page 161, 122 F.Supp. at page 680:

"We do not agree with the plaintiff's contention that any duty lasting for more than 30 days is 'extended active duty' within the meaning of section 402. We think that 'extended active duty' has a distinct statutory meaning, and does not include duty properly designated as training duty, no matter how long the training duty continues."

After having held that "training duty" did not qualify a reservist for retirement, the court remanded the case to the trial commissioner for a determination of whether Remaley was in fact on training duty.

A trial of the case disclosed that Remaley was a "trainor" rather than a "trainee" and as such did not come within the prohibition of the statute. Remaley v. United States, 139 F.Supp. 956, 134 Ct. Cl. 874. However, the court in the second Remaley case reiterated the view that there is a distinction between "active service" and "active duty for training."

In the instant case the orders clearly state that plaintiff was ordered to "active

duty training" at the Military Police School and, as a matter of fact, the findings, which are not excepted to, show " \* \* \* he was able to complete his school course." (Finding 7.)

Consequently, since plaintiff was ordered to a tour of duty for training purposes, he did not and could not qualify for retirement and retirement pay under the authority of the Remaley case, supra, and his petition is dismissed.[1]

It is so ordered.

DURFEE, Judge, concurs.

WHITAKER, Judge (concurring).

It is physical incapacity *at the time of discharge* that determines entitlement to retired pay. At the time plaintiff was discharged he was not incapacitated for military duty. The Army did not find that he was; he did not think he was; and the evidence clearly shows that he was not.

When he was discharged there was no discernible evidence of multiple sclerosis. This was not recognized as a possibility until nearly three years after his discharge; it was not diagnosed as his trouble until over five years after his discharge. In the meantime, he had had a complete neurological examination, in November 1949, and eight months thereafter he had had a number of physical examinations at the Naval Hospital in Philadelphia.

Under such facts, I do not think plaintiff was entitled to be retired for physical disability.

I prefer to rest the decision on this ground, although I recognize we held in the Remaley case, supra, that active duty for training did not come within the provisions of section 5 of the Act of

April 3, 1939, or of section 2, subsection (1) of the Act of June 20, 1949, supra.

JONES, Chief Judge (dissenting).

I believe the court has misconstrued the Remaley case. The majority opinion quotes from the opinion in 122 F.Supp. 679, 129 Ct.Cl. 159. It will be noted that the matter should be referred to a trial commissioner for the purpose of determining whether, notwithstanding the language quoted, the plaintiff was on active duty service.

When it was finally disposed of by an opinion—139 F.Supp. 956, 134 Ct.Cl. 874 —we held that the plaintiff should recover. We held that plaintiff was on extended active duty in fact, notwithstanding the recital "active duty for training" in the order.

In some respects the instant case is a stronger case for treating the period of service as "active duty service" than was the Remaley case, in which recovery was allowed. In the instant case the period of service was longer than in the Remaley case. Here there was nearly a year of service after the recall. If there were any doubt about the meaning of the "more than 30 days" provision the discussion of those Members of Congress in both bodies shows clearly that a case of this kind should be considered as coming within the meaning of active service, regardless of the wording of the orders. Congressman Edmiston in the House and Senator Barkley in the Senate, in explaining the bill, said that the bill was meant to exclude only Reserve officers who were called for two weeks' training periods, but if they were called for more than thirty days they would be entitled to the benefits of the Act. Congressional Record 84th Cong., Part II, pp. 1439 and 2287.

In addition, I would allow recovery for the reasons stated in my dissent in Borai-

---

1. While the writer of this opinion was and still is of the opinion that duty in excess of 30 days constitutes active military service, the majority of the court then and now believes otherwise. Since no useful purpose could be gained by adhering to my former position, I bow to the will of the court and hold that the Remaley case is controlling here.

ko v. United States, 146 Ct.Cl. 814, 821 (1959), MacFarlane v. United States, 140 F.Supp. 420, 134 Ct.Cl. 755, 760 (1956), and Holt v. United States, 140 F.Supp. 268, 134 Ct.Cl. 801, 805 (1956). Where, as in the instant case, there is no doubt that the disabled condition had its inception in the service and became disabling later, there should be retirement not later than the time it became disabling. But regardless of whether the court agrees with the latter basis of recovery, there is not the slightest doubt that if we are not to overrule the Remaley case the plaintiff is entitled to recovery.