**John M. SKARADOWSKI**
v.
**The UNITED STATES.**
No. 409–69.

United States Court of Claims.
Jan. 18, 1973.

---

3. There is no judgment for reprocurement costs since the defendant did not file a counterclaim for such costs.

Marshall G. Kaplan, Brooklyn, N. Y., attorney of record, for plaintiff.

Arthur E. Fay, Washington, D. C., with whom was Asst. Atty. Gen. Harlington Wood, Jr., for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

OPINION

PER CURIAM:

This case was referred to Trial Commissioner Louis Spector with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 134(h). The commissioner has done so in an opinion and report filed on April 24, 1972. Exceptions to the commissioner's opinion, findings of fact and recommended conclusion of law were filed by defendant, plaintiff urged their adoption and the case has been submitted to the court on oral argument of counsel and the briefs of the parties.

In this case the court stresses once again (see Duhon v. United States, 461 F.2d 1278, 198 Ct.Cl. 564 (1972)), that the statutory charter of the boards for correction of military records (10 U.S.C. § 1552) provides for correction of "*any* military record" when considered necessary "to correct an error *or remove an injustice*" (emphasis added). The court has absolutely no doubt that under this liberal standard, together with the admitted facts, the board was required to change plaintiff's records to show that he was properly ordered on active duty for the period from 1–5 July 1966, and was therefore properly ordered to active duty for a period of more than 30 days within 10 U.S.C. § 1201. The board's contrary determination was arbitrary and capricious under the controlling standard as well as unsupported by substantial evidence and legally erroneous. The record compelled the board to correct plaintiff's records in order to "remove an injustice" against him.

Since the court agrees with the commissioner's opinion, findings of fact and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same, together with the foregoing paragraph, as the basis for its judgment in this case. Therefore, it is concluded that plaintiff is entitled to recover and judgment is entered for plaintiff with the amount of recovery to be determined pursuant to Rule 131(c).

## OPINION OF COMMISSIONER

SPECTOR, Commissioner:

Plaintiff was a lieutenant colonel in the U. S. Army Active Reserve. Until the date of his separation, as hereinafter described, he had experienced distinguished military service, having entered upon active duty before the United States entered World War II. During the war he received a number of decorations. His active and reserve service 1941 through 30 June 1966, computed under 10 U.S.C. §§ 1208 and 1333, totaled 10 years and 39 days, and his postwar service in the Army Reserve had been considerably above average. For example, in the 5-year period just prior to the events which led to this lawsuit, he had served more than 500 days on active duty. From 1946 through 1966 plaintiff had accumulated a total of 1,847 points for his reserve service, 841 of these points between 1962 and 1966.

By letter orders of the Headquarters XIII U.S. Army Corps, Fort Devens, Massachusetts, dated 28 April 1966, plaintiff was ordered to active duty for training with the Rhode Island Subsector Command, Providence, Rhode Island, for a period of 25 days from 1 June 1966 "unless sooner relieved *or extended by proper authority*." [Emphasis supplied.] Those orders of 28 April were in fact extended to read "30 days from 1 June 1966" by an amendment of 21 June 1966.

Although not essential to plaintiff's case, it is observed in passing that his service pursuant to these orders was not in fact "active duty for training" (ACDUTRA). In reality, plaintiff's duty consisted of supervision of the reserve units comprising the Rhode Island Subsector Command as assistant commander under its commanding officer, a Lt. Col. Charles J. Hillsdale.

On 28 June 1966, Lieutenant Colonel Hillsdale requested leave from his commanding officer for the period 1 July to 5 July 1966 so that he might travel to Chicago and visit his mother who was ill. His request for leave was granted by Col. Bertil B. Sandell, the Chief of Staff of the XIII U.S. Army Corps, Fort Devens, Massachusetts, conditioned, however, upon Lieutenant Colonel Hillsdale's assurance that he would be able to designate another officer to take over his duties during his absence. Lieutenant Colonel Hillsdale was the *only officer* permanently assigned to the Rhode Island Subsector Command.

Accordingly, Lieutenant Colonel Hillsdale asked plaintiff to defer 3 days of annual leave the latter had earned and was scheduled to take 1 July through 3 July 1966, and to extend his active duty from 1 July until 5 July 1966 when Lieutenant Colonel Hillsdale was scheduled to return from Chicago. As commanding officer, Lieutenant Colonel Hillsdale ordered plaintiff to assume command of the Rhode Island Subsector until his return. Such orders are generally characterized as "verbal orders of the commanding officer" (VOCO).

Pursuant to those orders, plaintiff assumed command of the Rhode Island Subsector, actually occupying that office until 5 July 1966 and performing the duties required thereby. These included supervision of units preparing to leave for annual active duty training, procuring of orders for such units, and administrative assistance to them. When Lieutenant Colonel Hillsdale returned on 5 July, plaintiff briefed him on the events which had occurred during his absence.

Prior to this, by letter orders dated 2 June and 17 June 1966, plaintiff had been scheduled to proceed to Fort Knox, Kentucky, 6 July 1966 for 17 additional days of active duty for training (ACDUTRA). Accordingly, he left the Rhode Island Subsector Command at Providence on 6 July as a member of the advance party of his parent unit, and proceeded to Fort Knox where he conducted classes for the fourth year Command and General Staff School. While he was there on 13 July 1966, plaintiff was contacted by Lieutenant Colonel Hillsdale and asked if he would consider continuing on active duty at Providence upon his return from Fort

Knox. Plaintiff accepted, and orders were in fact being prepared for his return to Providence when the unfortunate events hereinafter described took place.

Plaintiff's duties at Fort Knox had been physically taxing. In his capacity as training director he had been lifting heavy boxes of training manuals and climbing flights of stairs during the period 8–16 July 1966. There was a dearth of transportation at Fort Knox and he was also required to walk a considerable distance to his quarters. On 13 July 1966 he reported to the dispensary complaining of feeling ill. He was given medication for an upset stomach. He remained on duty during that week, constantly complaining of illness.

On 16 July 1966 at about 5 p. m., however, he requested another officer at the school to drive him to the hospital because he felt extremely ill. An electrocardiogram taken in the emergency room at Ireland Army Hospital, Fort Knox, Kentucky, revealed an acute diaphragmatic wall infarction (heart attack).

Plaintiff was ultimately released from the Ireland Army Hospital on 23 August 1966. A medical report dated 17 August 1966 concluded that upon his entrance on active duty plaintiff "appeared to be in good health and there was no evidence of any misconduct on his part contributing to his heart attack." The report further indicated that he had no family history of cardiac disease. The examining physician concluded that plaintiff was "unfit for further military service under Chapter III, AR 40–501, Section 9, paragraph 321, Arteriosclerotic heart disease with objective evidence of myocardial infarction." Accordingly, he recommended "that the patient be returned to his local unit for further evaluation and separation procedures." The examining physician's report was confirmed in the report of a medical board dated 22 August 1966, and plaintiff was released from active duty on 23 August 1966.

By means of a check mark on the medical board report, plaintiff's heart attack was characterized as not in line of duty. He appealed that determination 19 December 1966, and on 14 February 1967, the Secretary of the Army reversed, stating:

    \*    \*    \*    \*    \*    \*

2. It is held by the Department of the Army that the myocardial infarction (A disease) for which officer was hospitalized 16 July 1966 at Fort Knox, Kentucky, during the performance of active duty for training was incurred in line of duty.

3. It is requested that all records be changed accordingly and that LTC Skaradowski be advised.

Subsequently plaintiff tried by letter of 1 June 1967 to secure a waiver of his physical disqualification because he wanted to continue his career in the U.S. Army Reserve. His application for a waiver reviewed his educational attainments, his decorations and commendations, his 17 years in the active reserve in increasingly responsible assignments, and his 500 days of active duty in the 5 years immediately preceding his heart attack. However, on 27 August 1967, after a physical examination of plaintiff, it was determined that he was not qualified for retention because of his heart condition. He has since been rated 30 percent disabled by the Veterans Administration.

The issue in this case originates in plaintiff's application dated 25 September 1967 for immediate placement on the Disability Retired List. He was told to apply to the Army Board for the Correction of Military Records (ABCMR) in order to qualify for retired status. This he did, 12 June 1968, asking "to have his records corrected to show that, while on an extended period of active duty from 1 June 1966 to 23 July 1966, he was permanently disabled from a disease (myocardial infarction) while entitled to receive basic pay, and that the disability was incurred in the line of duty." His application continues:

    \*   \*   \* Should such a correction be entered in his records, Colonel

Skaradowski would qualify for retirement under the provisions of 10 USC § 1201.[12]

12. 10 USC § 1201, clauses 1, 2, and 3(B)(i) (as amended by Pub.L. 87–651, 7 September 1962) provide that the Secretary concerned may retire a member with pay if, during a period of active duty of over 30 days duration, the member becomes permanently disabled, provided that the disability extends to 30 per cent under the Veterans Administration schedules and the member has at least eight years of service computed under 10 USC §§ 1208 and 1333.

The determination of the ABCMR was adverse to plaintiff and he was so advised by the Adjutant General 21 November 1968. The reason given was simply "that insufficient. evidence had been presented to indicate probable material error or injustice * * *."

When he requested reconsideration, the Executive Secretary of the ABCMR provided a more specific reason for denial of plaintiff's application, namely, insufficient evidence that plaintiff was on active duty during the period he served as subsector commander for Lieutenant Colonel Hillsdale pursuant to verbal orders (VOCO), as heretofore described.

The parties have, by stipulation, agreed to the admission of a number of joint exhibits. One of these is a statement from Lieutenant Colonel Hillsdale's commander, the aforementioned Col. Bertil B. Sandell. The statement dated 19 March 1969 advises in pertinent part that:

c. At this date, I cannot personally remember positively that Lt. Col. Skaradowski was designated to act for Lt. Col. Hillsdale during this period. However, having read a statement made by Lt. Col. Hillsdale (15 February 1968), I have verified that Col. Skaradowski was on active duty 1–5 July 1966, while Col. Hillsdale was in Chicago.

d. XIII USAC was inactivated on 1 July 1968; consequently, it is not possible to issue orders reflecting Lt. Col.

Skaradowski's period of active duty on 1–5 July 1966.

As a matter of fact, in a brief supplementary stipulation, the parties have narrowed the issue to the question of whether or not plaintiff was on active duty between 1 June 1966 and 5 July 1966. The period 1 July 1966 to 5 July 1966, pursuant to VOCO, serves as a bridge between the two periods specifically covered by letter orders, as above described.[1] Therefore, if plaintiff was on active duty between 1 July 1966 and 5 July 1966, there can be no question that he was called or ordered to active duty, as extended, for a period of more than 30 days, and he would be entitled to prevail. There are no other issues in this case.

Plaintiff was clearly on active duty during the connective period 1–5 July 1966. With what appears on this record to have been typical loyalty to the service, he acted as commander of the Rhode Island Subsector Command in place of its regular commander pursuant to the latter's order. It is in fact stipulated that Lieutenant Colonel Hillsdale "thereupon *ordered* the plaintiff to assume command of the Rhode Island Subsector until his return" and that plaintiff "*pursuant to such order,* assumed command of the Rhode Island Subsector and actually occupied such office until 5 July 1966 when Col. Hillsdale returned." [Emphasis supplied.]

One can only conjecture as to what effect it would have had on plaintiff's career as an officer in the active reserve, had he disobeyed that order. It is too crabbed a view to suggest that this period was not active duty, and that plaintiff's initial period of active duty had not been "extended by proper authority" just because the order was oral (VOCO), and was not later confirmed by written order. The military services could hardly function without competent orders, delivered orally. As Lieutenant Colonel

1. By stipulation of 16 July 1971, the parties have agreed that "[d]uring the period of 29 June 1966 until 5 July 1966, plaintiff performed the duties of Subsector Commander."

Hillsdale's commander, Colonel Sandell, stated:

XIII USAC was inactivated on 1 July 1968; consequently it is not possible to issue orders reflecting Lt. Col. Skaradowski's *period of active duty* on 1–5 July 1966. [Emphasis supplied.]

In the intervening period, prior to inactivation of XIII Corps, plaintiff had been vainly trying to secure a waiver of his disability and retention in an active status. Only when those commendable efforts failed, did he apply to be placed on the Disability Retired List. That was when he was informed that the absence of a writing to cover the period 1–5 July 1966, was deemed to defeat his application.

■ The law is replete with decisions holding "that done which ought to have been done." [2] The nature of the duty performed, rather than the form of the orders authorizing the duty, is the determining factor when considering eligibility for physical disability retirement.[3] And it would be "inane indeed" [4] to suggest that Lieutenant Colonel Hillsdale, commander of the Rhode Island Subsector Command was not competent to issue the orders in question. In other contexts, this court has not hesitated to afford relief where that serves, as here, to right an obvious injustice.[5]

Plaintiff was clearly on active duty from 1–5 July 1966, and it is this connective link between two periods of acknowledged active duty which establishes the "more than 30 days" requirement of 10 U.S.C. § 1201. That is the stipulated issue in the case. The ABCMR's determination to the contrary is not supported by substantial evidence. Moreover, in its interpretation of the pertinent statute, the determination is erroneous as a matter of law. It follows that plaintiff is entitled to recover and judgment is entered to that effect. The amount of recovery is reserved for further proceedings under Rule 131(c).

2. *See*, for example, Diamond v. United States, 176 Ct.Cl. 1103, 1110 (1966).

3. *Cf.* Remaley v. United States, 139 F.Supp. 956, 134 Ct.Cl. 874 (1956), a case which in a sense is *a fortiori*, because plaintiff was required in that instance to prove that he was not on "active duty for training." Plaintiff in this case, brought under 10 U.S.C. § 1201, is not barred even were it to be determined that his was "active duty for training."

4. *See* General Cas. Co. v. United States, 127 F.Supp. 805, 812–813, 130 Ct.Cl. 520, 533, cert. denied, 349 U.S. 938, 75 S.Ct.

783, 99 L.Ed. 1266 (1955). By way of further analogy, this court in contract cases has long recognized the doctrine of the "constructive change," that is a change not confirmed by written order, as contemplated by the contract. *See*, for an example of a host of such cases, Owens-Corning Fiberglas Corp. v. United States, 419 F.2d 439, 458–459, 190 Ct.Cl. 211, 244 (1969).

5. *See*, for example, Norcross v. United States, 142 Ct.Cl. 763 (1958); Stillman v. United States, 116 F.Supp. 622, 126 Ct.Cl. 750 (1953).