# United States Court of Appeals for the Federal Circuit

---

**MALCOLM PIPES,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2022-1509

---

Appeal from the United States Court of Federal Claims in No. 1:15-cv-01163-RAH, Judge Richard A. Hertling.

---

Decided: December 16, 2024

---

ALLEN ARTHUR SHOIKHETBROD, Tully Rinckey PLLC, Albany, NY, argued for plaintiff-appellant.

RETA EMMA BEZAK, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, DEBORAH ANN BYNUM, PATRICIA M. MCCARTHY, KRISTIN ELAINE OLSON; MARC A. NOWAK, Military Personnel Law and Litigation Branch, The Judge Advocate General's Corps., United States Air Force, Joint Base Andrews, MD.

---

Before PROST, CLEVENGER, and CHEN, *Circuit Judges*.

CHEN, *Circuit Judge*.

Malcolm Pipes appeals the decision of the United States Court of Federal Claims (Claims Court) granting the United States' motion for judgment on the administrative record and denying Mr. Pipes's. *Pipes v. United States*, 157 Fed. Cl. 483 (2022) (*Decision*). Mr. Pipes, a former reservist in the United States Air Force (Air Force), seeks disability-retirement pay and benefits through his Application for Correction of Military Records filed with the Air Force Board for Correction of Military Records (AFBCMR).[1]

This case is before us for a second time. In the first appeal, we reversed, holding that Mr. Pipes was in a duty status—specifically, inactive-duty training (IDT) status—when he was ordered to participate in the Air Force's Self-paced Fitness Improvement Program (SFIP). *Pipes v. United States*, 791 F. App'x 910, 916 (Fed. Cir. 2019) (*Pipes I*). We reversed because, "to the extent their analysis turned on [Mr.] Pipes'[s] duty status at the time of his orders, both the AFBCMR and the Claims Court erred in concluding that [Mr.] Pipes was not lawfully ordered to perform the SFIP designed for him." *Id.* Although the SFIP was ordinarily offered to reservists as a recommendation, Mr. Pipes received a *sui generis* mandate to participate. *Id.* at 916 n.4. *Pipes I* did not address, however, the question of whether Mr. Pipes was in a duty

---

[1] "The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. . . . [S]uch corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department." 10 U.S.C. § 1552(a)(1).

status when *performing* the SFIP, nor did it suggest that the *sui generis* order to participate automatically placed him into such status. On remand, the Claims Court and the AFBCMR denied relief to Mr. Pipes, concluding that, at the time of his injury, he was not in IDT status. For the reasons explained below, we *affirm*.

## BACKGROUND

Our previous decision explains the circumstances of Mr. Pipes's enrollment in the SFIP and his stroke while participating in that program, as well as the procedural history before the AFBCMR and Claims Court leading up to that appeal. *Pipes I*, 791 F. App'x at 911–14. We assume familiarity with these facts and therefore provide further details only as relevant to this appeal.

## I

We begin with an overview of the legal framework for Air Force reserve disability retirement, with a particular focus on IDT status. Section 1204 of Title 10 of the United States Code provides the conditions for entitlement to disability retirement for service members who were on active duty for 30 or fewer days or on IDT. In relevant part, the statute provides:

> Upon a determination by the Secretary concerned[2] that a member of the armed forces . . . is unfit to perform the duties of his office, grade, rank, or rating because of physical disability, the Secretary may retire the member with retired pay . . . if the Secretary also determines that . . . the disability . . . is a result of an injury, illness, or

---

[2] The term "Secretary concerned" means "the Secretary of the Air Force, with respect to matters concerning the Air Force and the Space Force." 10 U.S.C. § 101(a)(9)(C).

disease incurred or aggravated in line of duty . . . *while performing* active duty or *inactive-duty training* . . . .

10 U.S.C. § 1204(2)(B)(i) (emphases added). The term "inactive-duty training," in turn, is defined in relevant part as:

(A) duty prescribed for Reserves . . . by the Secretary concerned under section 206 of title 37 or any other provision of law; and

(B) special additional duties authorized for Reserves . . . by an authority designated by the Secretary concerned and performed by them on a voluntary basis in connection with the prescribed training or maintenance activities of the units to which they are assigned.

*Id.* § 101(d)(7).

The Air Force regulates "reserve personnel participation and training procedures" through Air Force Manual (AFMAN) 36-8001. J.A. 473 (capitalization removed); *see also id.* (The manual "gives guidelines for training and education activities within an Air Force Reserve unit."). AFMAN 36-8001 is issued by order of the Secretary of the Air Force (Secretary), and compliance with the publication is mandatory. *Id.* Chapter four of AFMAN 36-8001 concerns IDT, including the types of IDT available and the administrative requirements for "IDT Authorization." J.A. 250–51 ¶¶ 4.1–4.2. In relevant part, paragraph 4.2.1 provides:

4.2.1. *All* IDT *must*:

4.2.1.1. Have *advance authorization* from the member's unit commander (or designated representative) for unit personnel. For Individual Reservists the authorizing authority is the supervisor or

> program manager (This is done in Block III of the AF Form 40A).
>
> 4.2.1.2. . . . . *All IDT periods must be approved in advance, in writing*, by the member's supervisor with an information copy to the appropriate assigned Program Manager, *in advance of performing any IDT period.*
>
> 4.2.1.3. Be performed *for pay and points,*[3] *or points only* as an [Air Force Reserve] member without pay from another US government source (i.e. no dual compensation).

J.A. 250 ¶ 4.2.1 (emphases added). This paragraph conveys two requirements for "[a]ll" IDT: (1) the IDT must be authorized in advance and in writing by the reservist's supervisor, and (2) the IDT must be performed for either pay and points or points only. *Id.*

Chapter four of AFMAN 36-8001 also provides the minimum duration of an activity to be eligible for IDT: "Paid IDT periods shall not be under 4 hours," and "[p]oints only IDT periods shall not be under 2 hours." *Id.* at 254 ¶ 4.9. The only exception is for certain designated activities, for which a reservist can use the "cumulative method of time accounting" to "accumulate time spent (over 1 or more days) until reaching the 4-hour standard for one point." *Id.* ¶ 4.9.1.

---

[3] "Points are a unit of measurement of tracking a member's participation. They are also used to calculate the amount of participation for retirement purposes." J.A. 238 ¶ 2.1.

## II

On remand from our decision in *Pipes I*, the AFBCMR denied relief to Mr. Pipes on the basis that the order Mr. Pipes received to participate in the SFIP, "even though *lawful*, was not *enforceable* when the member was in civilian status," and therefore Mr. Pipes was not in duty status when his stroke occurred while he was participating in the SFIP.  J.A. 468, 470 (emphases added).  The Claims Court vacated that decision as arbitrary and capricious because the "finding that the lawful order was legally unenforceable is inconsistent with" this court's holding in *Pipes I.  Pipes v. United States*, 150 Fed. Cl. 76, 82–84, 87 (2020).  The Claims Court further noted that the AFBCMR "did not consider whether [Mr. Pipes] was required to satisfy the requirements of the AFMAN to qualify for IDT status."  *Id.* at 86–87.  Accordingly, the Claims Court remanded the case to the AFBCMR to consider that question, which turns on "whether the AFMAN's provisions are applicable to IDT pursuant to subparagraph (B) of section 107(d)(7) of Title 10."[4]  *Id.* at 87.

In December 2020, on remand from the Claims Court, the AFBCMR again denied relief to Mr. Pipes.  The AFBCMR determined that "the AFMAN 36-8001 administrative requirements apply to both 10 U.S.C. [§] 101(d)(7), subparagraphs (A) and (B)" and "AFMAN 36-8001 implements 10 U.S.C. [§] 101(d)(7) by providing the procedures for scheduling and authorizing IDTs, paid or unpaid, and the method for ensuring the proper accounting for each IDT."  J.A. 346.  The AFBCMR concluded, then, that under the AFMAN, reservists "must have the commander's (or designee['s]) authorization in advance to perform an IDT, paid or unpaid."  *Id.*  The AFBCMR found

---

[4]    Mr. Pipes does not claim that at the time of his stroke he was in IDT status under subparagraph (A) of that section.

that Mr. Pipes failed to prove he obtained the authorization for IDT required by the AFMAN:

> Although the commander issued [Mr. Pipes] a lawful order to perform the SFIP . . . , after a review of the entire case file, to include [Mr. Pipes's] rebuttal, the [AFBCMR] finds no documented evidence of advance IDT authorization by the commander (or designee) for exercising. . . . While the commander ordered [Mr. Pipes] to exercise, the [AFBCMR] finds this order does not automatically authorize IDT, paid or unpaid.

*Id.*

Following that decision, Mr. Pipes moved before the Claims Court for a further remand to the AFBCMR so that it could consider a new report by Mr. Pipes's expert, Colonel (Ret.) Larry D. Youngner. The Claims Court granted Mr. Pipes's motion.

In August 2021, the AFBCMR reviewed Col. Youngner's new expert report (as well as his supplemental expert report) and issued another decision, stating that it "remain[ed] unconvinced the evidence presented demonstrates an error or injustice." J.A. 433. The AFBCMR found that "a valid order to perform duty does not automatically place a service member in an IDT period and the commander, outside of any other orders given to the reservist, must approve IDT periods." *Id.* at 435. It then reiterated that, "as explained in [the AFBCMR's] previous conclusion . . . [Mr. Pipes] has provided no evidence that his commander ever attempted

to authorize[] an unpaid IDT for [Mr. Pipes's] SFIP participation outside of the UTA." *Id.*[5]

In January 2022, the Claims Court granted the United States' motion for judgment on the administrative record and denied Mr. Pipes's.[6]    First, the court rejected Mr. Pipes's argument that the AFBCMR's interpretation of the AFMAN's scope was contrary to law. *Decision*, 157 Fed. Cl. at 489–90.  Second, the court agreed with the AFBCMR that the order for Mr. Pipes to participate in the SFIP did not itself authorize IDT status and that "there is no evidence in the record that [Mr. Pipes] had advance authorization for IDT status, as required by the AFMAN." *Id.* at 491–92.

Mr. Pipes appeals.    We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## STANDARD OF REVIEW

We review a decision of the Claims Court granting or denying a motion for judgment on the administrative record *de novo* and apply the same standard of review as the Claims Court. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004); *see also Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005).  Under that standard, "we will not disturb the decision of the [AFBCMR] unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence." *Chambers*, 417 F.3d at 1227.

---

[5]    A UTA, or Unit Training Assembly, is a scheduled period of IDT completed by a Reserve unit.  *See* J.A. 250 ¶ 4.1.2; *Pipes I*, 791 F. App'x at 912.

[6]    The Claims Court "review[ed] both the AFBCMR's December 2020 decision on remand after *Pipes I*[] and its August 2021 decision responding to Col. Youngner's report." *Decision*, 157 Fed. Cl. at 488 n.5 (citations omitted).

DISCUSSION

Mr. Pipes's claim for disability-retirement pay and benefits rests on his view that he was in IDT status at the time of his injury. Mr. Pipes does not dispute that he did not receive authorization to perform IDT for either pay or points. Instead, Mr. Pipes contends that when participating in the SFIP, he was performing IDT for no pay and no points and was authorized to do so. He alleges two errors in the decision of the Claims Court on appeal. First, Mr. Pipes argues that the Claims Court erred in upholding the AFBCMR's conclusion that the AFMAN applies to all IDT under 10 U.S.C. § 101(d)(7)(B). Second, Mr. Pipes contends that even if the AFMAN did apply to him, the Claims Court erred in agreeing with the AFBCMR that he failed to prove he received the advance authorization required by the AFMAN. We reject both arguments.

I

According to Mr. Pipes, "[t]he AFMAN does not apply to duties not performed for pay or points, nor does it apply to training periods less than two (2) hours." Appellant's Br. 21. In other words, Mr. Pipes contends that a reservist can perform IDT without complying with the AFMAN's procedural requirements if performing duties not for pay or points or duties of insufficient duration.

Mr. Pipes has not shown the existence of a class of IDT that is without compensation and not subject to the strictures of the AFMAN. The AFMAN, with which "compliance . . . is mandatory," J.A. 473 (capitalization removed), states on its face that "*[a]ll* IDT must . . . [b]e performed for pay and points, or points only" and must "[h]ave advance authorization from the member's unit commander," J.A. 250 ¶ 4.2.1 (emphasis added). Mr. Pipes points to no provision of the AFMAN contemplating that IDT may be performed without receipt of pay or points or that the AFMAN applies to only a subset of IDT.

Mr. Pipes relies primarily on several publications—Air Force Instruction 36-2910 and two chapters from Volume 7A of the Department of Defense (DOD) Financial Management Regulation—that discuss IDT "without pay." *See* J.A. 180; J.A. 311; J.A. 312. These references do not support Mr. Pipes's argument. It is undisputed that IDT without pay exists. These references do not show the existence of IDT without compensation, i.e., IDT without pay *or* points. Indeed, they are consistent with the AFMAN, which distinguishes between IDT "for *pay and points*" and IDT "for . . . *points only . . . without pay* from another US government source." J.A. 250 ¶ 4.2.1.3 (emphases added). Mr. Pipes also cites a definition of IDT contained in DOD Instruction Number 4515.16, but this definition does not even mention the words pay or points, let alone indicate whether IDT may be performed without pay or points. J.A. 230–31.

Nevertheless, even if Mr. Pipes were correct as to the existence of a type of IDT without compensation under 10 U.S.C. § 101(d)(7)(B),[7] the AFMAN is clear that "*all* IDT" must be authorized in advance. J.A. 250 (emphasis added); *see also* 10 U.S.C. § 12315(a) (mandating that "[d]uty without pay shall be considered for all purposes as if it were duty with pay"). Mr. Pipes confuses the AFMAN's requirements for IDT with the scope of the AFMAN. That the AFMAN does not contemplate IDT without pay or points or IDT for activity periods under two hours does not mean that such activity can constitute IDT beyond the scope of the AFMAN and thus be exempt from its procedural requirements. Such logic would lead to the nonsensical result that activity failing to meet any of the AFMAN's regulations of IDT—for example, activity that

---

[7] We note that Mr. Pipes does not challenge the legality of AFMAN 36-8001 as contrary to 10 U.S.C. § 101(d)(7)(B).

lacks "appropriate and adequate training"—is exempted from the AFMAN's requirement that all IDT be approved in advance. J.A. 250.

The Claims Court did not err in concluding that the AFBCMR's determination that the AFMAN applies to and requires advance authorization for all IDT is not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

## II

We next address Mr. Pipes's contention that even if the AFMAN requires that he obtain advance authorization for IDT status, he received such authorization for his participation in the SFIP and the Claims Court and AFBCMR erred in holding otherwise. We reject each of Mr. Pipes's arguments in support of this position.

## A

Mr. Pipes first relies on certified statements by two of his former supervising Commanders asserting that he was in IDT status when performing his SFIP. Mr. Pipes forfeited this argument. As the United States points out, "Mr. Pipes did not bring up these statements or argue their relevance before the AFBCMR on *two* remands or to the [Claims Court] after the AFBCMR's subsequent *two* decisions, even though he had opportunities to do so." Appellee's Br. 32; *see Metz v. United States*, 466 F.3d 991, 999 (Fed. Cir. 2006) (collecting cases and finding forfeiture of "ability to challenge the [AFBCMR's] decision based on" argument not raised to the AFBCMR). Mr. Pipes's only response is to note that these statements were part of the record before the AFBCMR, the Claims Court, and our court during *Pipes I. See* Appellant's Reply Br. 5–6. This does not suffice. Courts of appeals "apply forfeiture to unarticulated legal and evidentiary theories not only because judges are not like pigs, hunting for truffles buried in briefs or the record, but also because such a rule ensures

fairness to both parties." *Jones v. Kirchner*, 835 F.3d 74, 83 (D.C. Cir. 2016) (cleaned up).

In any event, despite Mr. Pipes's failure to particularly identify to the AFBCMR the statements he now relies on, the AFBCMR reviewed Mr. Pipes's "entire case file" and "all Exhibits" yet still found "no documented evidence of advance IDT authorization." J.A. 346; J.A. 433, 435. The AFBCMR presumably reviewed the Commanders' certified statements and reasonably found them inadequate. Neither Commander avers that he gave Mr. Pipes the necessary advance authorization for IDT status, nor claims personal knowledge that another Commander did so. The conclusory, *post hoc* statements do not render the AFBCMR's finding unsupported by substantial evidence.

## B

Mr. Pipes next argues that the lawful order requiring him to participate in the SFIP itself constituted authorization for IDT status. Like the AFBCMR and the Claims Court, we are unpersuaded by this argument. The Claims Court noted that Mr. Pipes "has not pointed to any source of law establishing an IDT status implicitly authorized in this way, and [Mr. Pipes's] counsel admitted at oral argument that this situation was not necessarily contemplated by the relevant statutes and regulations." *Decision*, 157 Fed. Cl. at 492. Mr. Pipes has also not provided any such authority before us.

Our decision in *Clark v. United States*, 656 F.3d 1317 (Fed. Cir. 2011) (*Clark II*) is instructive. In *Clark II*, National Guard members brought a class action seeking compensation for time spent taking correspondence courses that they were required to take by the Secretary of the Army and the Secretary of the Air Force. *Id.* at 1318–19. We affirmed a grant of summary judgment against the National Guard members because regulations prescribed by the respective Secretaries required "written authorization placing [a member] into a pay duty status"

as a "prerequisite" for training to be compensable, and "none of the plaintiffs received written orders or authorizations from their state commanders in connection with any of the correspondence courses they took." *Id.* at 1322 (citation omitted). That is, *Clark II* held that a requirement to participate in certain training does not *ipso facto* place a member of the armed forces into duty status if advance authorization for such status is a prerequisite prescribed by the Secretary but is not obtained.[8]

Mr. Pipes cites several non-binding cases and one case from one of our predecessor courts in support of his argument. Crucially, none of Mr. Pipes's cases address whether a lawful order to perform some activity automatically places a service member in duty status despite a lack of required preauthorization for such status. In *Skaradowski v. United States*, 471 F.2d 627, 629 (Ct. Cl. 1973) (per curiam), for example, a member of the Army Active Reserve was ordered in writing to active duty for training for a defined duration "unless . . . *extended by proper authority*." The Army Board for the Correction of Military Records found that verbal orders of the reservist's commanding officer were insufficient evidence that his active duty had been extended. *Id.* at 629, 631. The Court of Claims disagreed, holding that the reservist's initial period of active duty was properly *extended* by verbal order, notwithstanding that the order was not confirmed in writing. *Id.* at 631. By contrast, the issue in our case is

---

[8]    Mr. Pipes cites to and misreads our earlier decision in *Clark v. United States*, 322 F.3d 1358 (Fed. Cir. 2003) (*Clark I*), as determining that the National Guard members were "entitled to compensation for completing required correspondence courses in off duty time." Appellant's Br. 34. We expressly noted in *Clark II* that our *Clark I* "opinion did not express an ultimate view on the merits of [the] claim for compensation." 656 F.3d at 1321.

whether Mr. Pipes was authorized for duty status at all when performing his SFIP.

Furthermore, unlike the formalistic reasoning of the military corrections board in *Skaradowski*, the AFBCMR here found that "the case turns on whether [Mr. Pipes] had prior commander authorization to be in a no pay/no points IDT status" regardless of the absence in Mr. Pipes's case file of a completed Form 40A—the form directed by the AFMAN to be used in obtaining and documenting advance authorization for IDT.  J.A. 346; *see* J.A. 250 ¶ 4.2.1.1; J.A. 257 ¶ 4.12.1.1; *see also Decision*, 157 Fed. Cl. at 491 ("[T]he lack of the [Air Force] Form 40A was not determinative for the [AFBCMR's] decision . . . .").  Mr. Pipes's arguments concerning Form 40A therefore miss the point, as the AFBCMR's decision did not turn on the absence of that form.

Accordingly, the AFBCMR's conclusion that the order directing Mr. Pipes to participate in the SFIP did not itself authorize IDT status is not arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

C

Finally, Mr. Pipes suggests that his stroke must have occurred while he was in duty status because the Department of Veterans Affairs (VA) has granted him service connection for residuals of the stroke.  *See* Appellant's Br. 24, 32, 40.  But because of the different standards applicable to the VA's inquiry for service connection, "the VA's disability determinations are not 'binding upon the court nor conclusive on the issue of disability retirement.'" *Gilbreth v. United States*, 94 Fed. Cl. 88, 97 (2010) (quoting *Finn v. United States*, 548 F.2d 340, 342 (Ct. Cl. 1977)).  Such differences are on full display in this case.  By regulation, the VA will consider a "secondary condition" to be service connected if the disability "is proximately due to or the result of a service-connected disease or injury."  38 C.F.R. § 3.310(a).  In

granting service connection for Mr. Pipes's stroke, the Board of Veterans' Appeals did not determine that Mr. Pipes's stroke was incurred or aggravated during duty status. Rather, it merely found that the stroke was proximately caused by Mr. Pipes's already service-connected hypertension. *See* J.A. 271–74; Appellee's Br. 36–37 (citing J.A. 271–74). This finding has no bearing on the issue of Mr. Pipes's duty status and whether he received the advance authorization required by the AFMAN for such status.[9]

\* \* \*

After reviewing Mr. Pipes's submissions, the AFBCMR ultimately found that Mr. Pipes provided no evidence that he was authorized for IDT status when performing the SFIP. We cannot say that this finding is arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

## CONCLUSION

We have considered Mr. Pipes's remaining arguments but find them unpersuasive. We sympathize with the plight of Mr. Pipes. However, we discern no error in the

---

[9] Mr. Pipes relatedly contends that a conflict exists between the applications of 10 U.S.C. § 1204 and 38 U.S.C. § 5107, the statutory "benefit of the doubt" rule applicable to claims for VA benefits. In obligating "the Secretary" to provide VA claimants with the benefit of the doubt in cases of approximately equipoised evidence, section 5107 refers to the Secretary of Veterans Affairs, not the Secretary of the Air Force or of any other military branch. *See* 38 U.S.C. § 101(1). And to the extent Mr. Pipes refers to the differing outcomes between the VA's grant of service connection and the AFBCMR's determinations regarding Mr. Pipes's duty status, there is no "conflict" as just explained.

decision under review before us.  We therefore affirm the judgment of the Claims Court.

**AFFIRMED**

Costs

No costs.